# United States Court of Appeals for the Federal Circuit

---

**JOSE E. ROSARIO-FABREGAS,**
*Petitioner*

v.

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF THE ARMY,**
*Intervenor*

---

2015-3102

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-13-0167-I-1.

---

Decided: August 16, 2016

---

ROBERT J. GAJARSA, Latham & Watkins LLP, Washington, DC, argued for petitioner. Also represented by BRETT MATTHEW SANDFORD, Menlo Park, CA.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by BRYAN G. POLISUK.

KRISTIN MCGRORY, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, argued for intervenor. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; JOHN KASBAR, U.S. Army Corps of Engineers, Jacksonville, FL.

---

Before DYK, WALLACH, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* DYK.

HUGHES, *Circuit Judge.*

Mr. Jose Rosario-Fabregas seeks review of a final decision of the Merit Systems Protection Board dismissing his appeal for lack of jurisdiction after concluding that Mr. Rosario was not constructively suspended during his four month absence from work. Because the Board's decision applied the correct legal standard to determine whether an employee has been constructively suspended and is supported by substantial evidence, we affirm.

I

Mr. Rosario served as a biologist and project manager for the Regulatory Division of the Army Corps of Engineers (Corps) until he was fired in February 2010. In November 2011, the Board determined that the termination violated Mr. Rosario's due process rights and ordered his prompt restoration. This improper removal caused Mr. Rosario to suffer from depression, thus he voluntarily took sick leave to recover before resuming his duties.

On May 7, 2012, Mr. Rosario submitted a letter from his physician, Dr. Juan Rodriguez-Velez, to his supervisor, Mr. Sindulfo Castillo, stating that his symptoms, which included severe anxiety, paranoia, chronic insomnia, marked irritability, frequent panic attacks, and aggressive episodes, were not improving. Dr. Rodriguez-Velez recommended either: (1) referring Mr. Rosario for

partial hospitalization; (2) relocating Mr. Rosario's working area; or (3) providing reasonable accommodation for three months to evaluate whether Mr. Rosario was emotionally stable to continue working.

One month later, Mr. Rosario submitted another letter to Mr. Castillo from Dr. Rodriguez-Velez, which recommended that Mr. Rosario return to work on July 2, 2012, for 20–30 hours per week, because he had "started to advance emotionally." J.A. 1279. The Corps viewed this letter as a request for reasonable accommodation of Mr. Rosario's medical condition. Therefore, on June 14, 2012, Mr. Castillo requested further information to clarify Mr. Rosario's proposed accommodation, including the number of hours he wanted to work per week, his proposed schedule, and if he was requesting leave for the hours he was not working each week or if he was requesting to be switched to a part-time schedule.

On June 25, 2012, Mr. Castillo reminded Mr. Rosario to submit the information so that the Corps could continue processing his request for accommodation. Mr. Rosario replied that he would not be submitting the forms because he was going to return to work full time.

The next day, Mr. Castillo informed Mr. Rosario that due to his symptomatology and the possibility of aggressive episodes, the Corps had a reasonable belief that he could not perform an essential job function and/or that he represented a direct safety threat to himself or his coworkers. Therefore, to return to duty on July 2, 2012, Mr. Rosario needed to provide a medical release from his physician addressing the history of his medical condition, his prognosis, including an estimated date of recovery, and an explanation of the condition's impact, including any resultant medical restrictions and the reasons for them. Mr. Castillo also informed Mr. Rosario that he needed to request approved leave or risk being placed in

AWOL status until he provided the requested medical documentation.

Mr. Rosario requested leave under protest. On July 23, 2012, Mr. Rosario submitted a letter from Dr. Rodriguez-Velez, which recommended that Mr. Rosario apply for disability because his depression had returned. Mr. Rosario did not provide any other medical documentation and continued to request leave under protest. On September 25, 2012, Mr. Castillo informed Mr. Rosario that he had not yet provided adequate medical documentation that would allow the agency to evaluate his request to return to work.

On November 14, 2012, Mr. Rosario forwarded a report from Dr. Rodriguez-Velez which outlined his treatment regimen, and explained that Mr. Rosario could exercise necessary impulse control and perform his duties at an intermediate capacity, if in a structured and predictable environment. Dr. Rodriguez-Velez recommended that Mr. Rosario return to work beginning on November 19, 2012 for 20–30 hours per week.

On November 15, 2012, the Corps issued a "Revised Notice of Proposed Removal" based on the same charges that led to the first removal action in February 2010. Mr. Rosario was informed that he would be placed on administrative leave, beginning November 18, 2012, pending a decision from the deciding official regarding the proposal.

Mr. Rosario appealed, arguing that he was constructively suspended from July 2, 2012 until November 18, 2012, when he was placed on administrative leave. The Board, however, concluded that he was not constructively suspended and dismissed the appeal for lack of jurisdiction.

Mr. Rosario appeals. We have jurisdiction under 5 U.S.C. §§ 7703(b)(1)(A), 7702(a)(1)(A), and 28 U.S.C. § 1295(a)(9).

## II

We may set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether the Board had jurisdiction to adjudicate an appeal is a question of law, which we review de novo. *Herman v. Dep't of Justice*, 193 F.3d 1375, 1378 (Fed. Cir. 1999) (citing *Middleton v. Dep't of Def.*, 185 F.3d 1374, 1379 (Fed. Cir. 1999)); *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). This court is bound by the Board's jurisdictional factual findings "unless those findings are not supported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998).

## A

The Board's appellate jurisdiction is limited to agency actions over which it has been granted jurisdiction by law, rule, or regulation. 5 U.S.C. § 7701(a). Appealable agency actions include removals and suspensions for more than 14 days. 5 U.S.C. §§ 7512, 7513(d). Additionally, this court has recognized that "seemingly voluntary actions in some circumstances may be considered adverse actions" over which the Board has jurisdiction. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc). Specifically, the Board has jurisdiction "if the employee proves, by a preponderance of the evidence, that [his or her action] was involuntary and thus tantamount to [a forced enumerated adverse action]." *Id.* at 1329 (alterations in original) (citing *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001)).

One such involuntary action that the Board has jurisdiction over is an appeal based on a "constructive suspension"—an *involuntary* absence from an agency for more than 14 days. *Halloway v. U.S. Postal Serv.*, 993 F.2d 219, 220–21 (Fed. Cir. 1991) (the dispositive inquiry for whether there has been a suspension for jurisdictional purposes is "whether the employee's absence from the agency was voluntary or involuntary").

In the context of constructive resignations and retirements, the decision to retire or resign is presumed voluntary "and this presumption will prevail unless plaintiff comes forward with sufficient evidence to establish that the resignation [or retirement] was involuntarily extracted." *Garcia*, 437 F.3d at 1329. Claimants generally allege involuntariness by establishing that the resignation or retirement was the product of (1) misinformation or deception by the agency or (2) coercion by the agency. *Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1121 (Fed. Cir. 2013). This court has determined that the Board has jurisdiction over involuntary coercion claims if the employee first establishes that: "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." *Garcia*, 437 F.3d at 1329 (quoting *Shoaf*, 260 F.3d at 1341).

Here, Mr. Rosario alleges that his decision to take leave was involuntary due to coercion by the Corps. *See* Pet. Br. 21 ("On behalf of the Corps, Mr. Castillo decided that [Mr. Rosario] could not perform the duties of his position because of his medical disabilities and forced him to use leave indefinitely . . . ."). Therefore, the Board required Mr. Rosario to demonstrate that his absence from work was involuntary by proving that: (1) he lacked a meaningful choice in the matter; and (2) it was the Corps' wrongful actions that deprived him of that choice.

*See Romero v. U.S. Postal Serv.*, 121 M.S.P.R. 606, 610 (2014). Ultimately, the Board concluded that "[c]onsidering the appellant's failure to engage in the interactive process with respect to his request for part-time work and his failure to provide documentation from his psychiatrist releasing him for full-time work . . . the agency did not act improperly in refusing to place the appellant back in a duty status." J.A. 12.

Mr. Rosario argues, however, that the Board's requirements for establishing involuntariness erroneously conflated the merits determination (whether the Corps' action was wrongful) with the jurisdictional question (whether Mr. Rosario's absence was involuntary). *See* Pet. Br. 21–23. We disagree. In the context of constructive action cases, whether an agency acted wrongfully is fundamental to determining jurisdiction because "[a]n action is not voluntary if it is produced by government conduct which is wrongful." *Roskos v. United States*, 549 F.2d 1386, 1389–90 (Ct. Cl. 1977). Moreover, the Board's requirements for establishing jurisdiction in constructive suspension cases are directly in line with this court's requirements for establishing jurisdiction in constructive retirement and resignation cases. *Compare Romero*, 121 M.S.P.R. at 610 (requiring an employee to establish involuntariness by proving that the agency's wrongful actions deprived him of a meaningful choice in the matter), *with Garcia*, 437 F.3d at 1329 (requiring an employee to establish involuntariness by proving, among other things, that the resignation or retirement was the result of improper acts by the agency). Therefore, the standard used by the Board to determine if Mr. Rosario's absence from work was involuntary was appropriate.

## B

Because we find the Board's jurisdictional inquiry appropriate, Mr. Rosario's petition for review must be denied if the Board's decision is supported by substantial

evidence. J.A. 12; *see Bolton*, 154 F.3d at 1316; *Hogan v. Dep't of Navy*, 218 F.3d 1361, 1364 (Fed. Cir. 2000) ("[T]his court will not overturn an agency decision if it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks and citation omitted)).

Mr. Rosario asserts that his absence from work from July 2, 2012 until November 18, 2012, was involuntary—i.e., he lacked a meaningful choice in the matter. Even assuming that assertion is correct, for Mr. Rosario to prevail, he must also show that his absence was involuntary because it was caused by improper agency action. *See Romero*, 121 M.S.P.R. at 610.

When an employee voluntarily takes leave, an agency may properly refuse to allow the employee to resume working if the employee does not satisfy the agency's conditions for returning to work. *Id.* at 610 n.2 ("[W]hile the agency's refusal to allow the appellant to return to work is the immediate cause of his absence, the proximate cause is arguably his failure to meet the conditions of the agency's 'clearance to return to work' policy."). In those circumstances, the agency's refusal to allow the employee to return to work does not amount to a constructive suspension.

Here, Mr. Rosario took voluntary leave to recover from depression. When Mr. Rosario was able to resume working, the Corps conditioned his return on the provision of a medical release in which his physician addressed the history of his medical condition, his prognosis, including estimated date of recovery, and an explanation of the impact of the medical condition, including any resultant medical restrictions and the reasons for them.[1]  J.A. 1291.

---

[1]    We offer no conclusion as to whether the Corps' conditions for returning to work violate the Americans

Mr. Rosario did not provide the Corps with the requested medical release and thus failed to comply with the Corps' conditions for returning to work. Accordingly, substantial evidence supports the Board's finding that the Corps did not act improperly by refusing to allow Mr. Rosario to return to work. Because the Corps did not act improperly in refusing to allow Mr. Rosario to return to work, his absence was not involuntary and thus he was not constructively suspended.

## III

Because the Board applied the correct standard for determining whether an employee has been constructively suspended and substantial evidence supports the finding that the Corps did not act improperly in refusing to allow Mr. Rosario to return to work, Mr. Rosario was not constructively suspended. Therefore, we affirm the Board's decision dismissing the appeal for lack of jurisdiction.

**AFFIRMED**

No costs.

---

with Disabilities Act Amendments Act, as jurisdiction for those claims lie with the Equal Employment Opportunity Commission, 5 U.S.C. § 7702(b)(1), or the appropriate United States District Court, 5 U.S.C. § 7703(b)(2).

# United States Court of Appeals for the Federal Circuit

---

**JOSE E. ROSARIO-FABREGAS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF THE ARMY,**
*Intervenor*

---

2015-3102

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-13-0167-I-1.

---

DYK, *Circuit Judge*, dissenting.

The majority in this case affirms the Board's dismissal of Mr. Rosario's case for lack of jurisdiction. Unfortunately, the panel majority, the Board, the agency, and the petitioner himself view the case as involving an alleged constructive suspension—that is, a purportedly voluntary act that is, in fact, involuntary. In my view this is not a true constructive suspension case in which an employee's facially voluntary leave is, in fact, coerced and involuntary. Instead, under our court's precedent, Mr. Rosario's

absence is properly viewed as a facially involuntary suspension over which the Board has jurisdiction.

It is undisputed that in June of 2012, Mr. Rosario contacted his supervisor at the Corps, Mr. Castillo, asking to return from sick leave on July 2, 2012. Mr. Castillo refused to permit him to return to work absent medical documentation establishing that Mr. Rosario was able to perform his job safely and capably. As the majority opinion describes, "[w]hen Mr. Rosario was able to resume working, the Corps conditioned his return on the provision of a medical release in which his physician addressed the history of his medical condition, his prognosis, including estimated date of recovery, and an explanation of the impact of the medical condition, including any resultant medical restrictions and the reasons for them." Maj. Op. at 8. Between July 2 and November 18, 2012, the employee asked to work, and the agency prevented him.[1]

This case is governed by *Pittman v. Merit Systems Protection Board,* 832 F.2d 598 (Fed. Cir. 1987). There, we reviewed the Army's decision to place an employee "on enforced leave after determining that it could no longer retain him on a light-duty position and that it had no other position which he was physically capable of performing within his medical restrictions." *Id.* at 599. We held that this enforced leave constituted an appealable suspension of more than 14 days.[2] *Id.* at 600.

---

[1]    After the agency refused to let him return, Mr. Rosario chose to use leave rather than risk being placed in AWOL status. But that does not transform his facially involuntary suspension into a voluntary one.

[2]    Although the statute defines a "suspension" as "the placing of an employee, *for disciplinary reasons*, in a temporary status without duties and pay," 5 U.S.C.

"[I]ndefinite enforced leave is tantamount to depriving the worker of his job—without any review other than by the agency—until the agency itself changes its mind and decides that he can perform his job." *Id.*

As in *Pittman*, Mr. Rosario's leave was "a suspension for more than 14 days." 5 U.S.C. § 7512(2). Under § 7513(d), "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title." 5 U.S.C. § 7513(d). We held in *Garcia* that "jurisdiction under § 7512 is established if and when a claimant shows that he or she is, in fact, a covered employee as required by the statute and that the agency took one of the enumerated actions in § 7512 against the claimant." *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1327–28 (Fed. Cir. 2006) (en banc). Mr. Rosario has met this burden.

A constructive suspension, by contrast, exists when an employee's facially voluntary leave is, in fact, coerced and involuntary. "A constructive adverse action arises when an agency's conduct leaves an employee no alternative but for the employee, involuntarily, to impose the adverse action on himself or herself." *Id.* at 1324. The MSPB has previously distinguished an enforced leave from a true constructive suspension. In *Abbott v. United States Postal Service*, the Board reviewed *Pittman* and noted that "an agency's placement of an employee on

§ 7501(2) (emphasis added), *Pittman* held that enforced leaves qualify, because such suspensions "are 'disciplinary' in the broader sense of maintaining the orderly working of the Government against possible disruption by the suspended employee," 832 F.2d at 599 (quoting *Thomas v. Gen. Servs. Admin.*, 756 F.2d 86, 89 (Fed. Cir. 1985)).

enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction." 121 M.S.P.R. 294, 298 (M.S.P.B. 2014) (citing *Pittman*, 832 F.2d at 599–600). *Abbott* held that "suspensions under these circumstances are not 'constructive,' and the case law concerning constructive suspensions is inapplicable." *Id.* This is a meaningful distinction, as the petitioner in a non-constructive suspension case does not need to clear the additional jurisdictional hurdle of proving the involuntariness of his absence from work. Mr. Rosario's claim is not a constructive suspension claim because he was barred from returning to work by the agency.

The Board's decision does not mention *Pittman*, and its appeal brief dismisses the decision in passing, noting that "what the petitioner has alleged in this matter" is a constructive suspension, not an enforced leave suspension. Resp't's Br. at 24 n.3. While Mr. Rosario framed his petition and now frames his appeal in terms of constructive suspension, we cannot, because of that error, apply an incorrect jurisdictional framework. Indeed, it is well established that we are obliged to decide jurisdictional questions without regard to a petitioner's erroneous positions on jurisdictional issues. "[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation and internal quotation marks omitted). "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (internal citation omitted); *see also* 14D Charles Alan Wright et al., *Fed. Practice & Procedure* § 3801 (4th ed. 2013) ("Subject matter jurisdiction . . .

cannot be waived by the parties."). "The Board has juris-diction to determine whether a resignation was voluntary or involuntary because it has jurisdiction to determine its jurisdiction, as do its AJ's." *Cruz v. Dep't of the Navy*, 934 F.2d 1240, 1244 (Fed. Cir. 1991) (en banc).

To be sure, the agency may have been justified in re-fusing to permit Mr. Rosario to return to work. An agency with reasonable concerns should have the authority to require a long-absent employee to submit documentation of fitness to work as a condition of return. But the propri-ety of an agency's decision to bar an employee from work for failure to submit medical documentation is a merits question, not a jurisdictional one. I would reverse the MSPB's dismissal for lack of jurisdiction and remand with instructions to consider the merits of Mr. Rosario's claim. I respectfully dissent.