**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 22**

Docket No. DC-0752-17-0281-I-1

**Franklin Martin,**

**Appellant,**

**v.**

**United States Postal Service,**

**Agency.**

July 20, 2022

Franklin Martin, Durham, North Carolina, pro se.

Brandon L. Truman, Charlotte, North Carolina, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his constructive suspension appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, FIND that the Board has jurisdiction over this appeal, REVERSE the appellant's constructive suspension, and FIND that he established his affirmative defense of disability discrimination.

BACKGROUND

¶2      The appellant, a preference-eligible Window Clerk, left work after suffering an anxiety attack that triggered an asthma attack on December 15, 2016. Initial

Appeal File (IAF), Tab 1 at 2, Tab 8 at 11, Tab 14 at 13, Tab 20, Hearing Compact Disc (HCD) (testimony of the appellant). According to the appellant, he saw his primary care physician at her first availability on January 11, 2017, and then saw his clinical psychologist, for further evaluation and clearance to return to work. IAF, Tab 12 at 3; HCD (testimony of the appellant). The appellant believed, and the agency agreed, that he was required to submit medical documentation to the agency and receive the agency's permission prior to returning to work. IAF, Tab 14 at 41; HCD (testimony of the appellant). On January 12, 2017, his psychologist faxed a note to the agency's Occupational Health Nurse Administrator (OHNA) stating that the appellant's health episode on December 15, 2016, was psychological in nature and that he had sufficiently recovered to return to work with no restrictions. IAF, Tab 4 at 11-12, Tab 14 at 39. After not hearing anything from the agency regarding his clearance to return to work, the appellant reported to his duty station on January 26, 2017, but a supervisor told him that he had to leave because he had not been cleared to return to work. IAF, Tab 1 at 6; HCD (testimony of the appellant).

¶3      On January 27, 2017, the appellant filed the instant Board appeal, alleging that the agency had constructively suspended him following an absence for medical reasons and discriminated against him on the basis of disability. IAF, Tab 1, Tab 11 at 2. On February 9, 2017, he received a February 6, 2017 letter from his station manager informing him that his psychologist's return-to-work letter was deficient because it did not state whether the appellant was a threat to himself or others. IAF, Tab 8 at 3, 15. In a letter to the agency dated February 13, 2017, the appellant's psychologist stated that the appellant was not a threat to himself or others. IAF, Tab 14 at 43.

¶4      The agency "concede[d]" that the Board had jurisdiction over this appeal, indicated that it would pay the appellant back pay and benefits, and moved that the appeal be stayed pending the payment of back pay and benefits, which would render the appeal moot. IAF, Tab 9. The administrative judge issued an order

advising the parties that the appeal would not be rendered moot by such payments because the appellant had raised an affirmative defense of disability discrimination and might be entitled to additional damages if he prevailed. IAF, Tab 11 at 3. In its prehearing submissions, the agency indicated that it returned the appellant to work and that it intended to provide him back pay for the period from January 12 through March 20, 2017. IAF, Tab 13 at 7, 20.

¶5 After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that, notwithstanding the agency's conceding jurisdiction, the Board lacked jurisdiction over the appeal because the appellant failed to show that his absence from work was involuntary. IAF, Tab 21, Initial Decision (ID). In so finding, the administrative judge explained that the agency had a reasonable basis for requesting documentation regarding whether the appellant was a danger to himself or others because the station manager knew that his absence was related to a psychological condition, he engaged in an altercation with his supervisor before leaving work on December 15, 2016, and he previously was reassigned to his current duty station because he could not work with a particular supervisor. ID at 27. She further found that the agency timely notified the appellant of the requirement to provide the additional medical documentation and that, although the agency's delay in returning the appellant to work was regrettable, it was not wrongful. ID at 28-32. Because she found that the appellant failed to establish jurisdiction over his appeal, she did not reach the appellant's disability discrimination affirmative defense but noted that she would have found that he failed to establish it. ID at 32 n.2.

¶6 The appellant has filed a petition for review of the initial decision and has submitted, for the first time on review, a sworn statement from a coworker attesting that she, not the appellant, had a disagreement with the appellant's supervisor on December 15, 2016. Petition for Review (PFR) File, Tab 1 at 12. The agency has responded in opposition to the petition for review. PFR File, Tab 3.

ANALYSIS

¶7        A preference-eligible Postal Service employee who has completed more than 1 year of current continuous service, like the appellant, may appeal a suspension, or a constructive suspension, of more than 14 days to the Board. 5 U.S.C. §§ 7511(a)(1)(B)(ii), 7512(2), 7513(d); *see Rosario-Fabregas v. Merit Systems Protection Board*, 833 F.3d 1342, 1345-46 (Fed. Cir. 2016) (recognizing the Board's jurisdiction over constructive suspensions of more than 14 days); IAF, Tab 4 at 9.  Although various fact patterns may give rise to an appealable constructive suspension, all constructive suspension claims are premised on the proposition that an absence that appears to be voluntary actually is not. *Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 8 (2015), *aff'd*, 833 F.3d 1342.  To demonstrate that the absence was not voluntary and is an actionable constructive suspension, an appellant must show the following: (1) he lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived him of that choice.  *Id.*  This analysis extends to situations in which the agency prevented the appellant's return to work after an initially voluntary leave of absence.  *Id.*

¶8        The appellant must prove jurisdiction in a constructive adverse action appeal by preponderant evidence.[1]  *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 8 (2014).  The jurisdictional issue in such appeals is often dispositive.  *Id.* That is, if the appellant fails to meet his burden of establishing by preponderant evidence that he was constructively suspended, the appeal will be dismissed because the Board lacks jurisdiction over appeals of employees' voluntary actions.  *Id.*  Because such constructive suspensions are often effected without

---

[1] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

notice, however, if the appellant establishes jurisdiction, the Board will reverse the agency's action on due process grounds without proceeding to the merits. *Id.*

¶9    Here, once the appellant submitted a medical note on January 12, 2017, releasing him to return to work without restrictions, the agency's decision not to permit him to return deprived him of a meaningful choice in the matter. *See Romero v. U.S. Postal Service*, 121 M.S.P.R. 606, ¶ 9 (2014). Thus, the appellant satisfied the first prong of the constructive suspension test. The administrative judge found, however, that he failed to prove that his absence resulted from the agency's wrongful actions. ID at 26-32.

¶10   As explained by our reviewing court, "[w]hen an employee voluntarily takes leave, an agency may properly refuse to allow the employee to resume working if the employee does not satisfy the agency's conditions for returning to work." *Rosario-Fabregas*, 833 F.3d at 1347. The employee's resulting absence is not a constructive suspension. *Id.* If, however, the agency's conditions for returning to work are wrongful, then the employee's absence following the agency's refusal to allow him to return to work may be deemed a constructive suspension. *See Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 8.

¶11   The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. The standards under the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008, have been incorporated by reference into the Rehabilitation Act and the Board applies them to determine whether there has been a Rehabilitation Act violation. 29 U.S.C. § 791(f); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.3 (2014). The ADA significantly restricts the medical inquiries that an agency may make of an employee. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 29 & n.6 (2014). Under the ADA, an agency may require a medical examination or make a medical inquiry regarding whether an employee "is an individual with a disability or as to the

nature or severity of the disability" only when such inquiry or examination "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The Equal Employment Opportunity Commission (EEOC) has promulgated regulations implementing this statutory provision and issued enforcement guidance addressing the ADA's limitations on disability-related inquiries and medical examinations during employment. 29 C.F.R. §§ 1630.13(b), 1630.14(c); EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the [ADA], Notice 915.002, 2000 WL 33407181 (July 27, 2000) (Enforcement Guidance). The Board generally defers to the EEOC on issues of substantive discrimination law, and we find that it is appropriate to do so here. *See Evans v. Department of Homeland Security*, 107 M.S.P.R. 484, ¶ 9 (2007).

¶12        Ordinarily, a disability-related inquiry or medical examination may be "job-related and consistent with business necessity" if an employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition." *Archerda*, 121 M.S.P.R. 314, ¶ 30 (quoting *Watkins v. U.S. Postal Service*, EEOC Appeal No. 01981800, 2001 WL 1097442, at *2 (Aug. 29, 2001)); Enforcement Guidance, 2000 WL 33407181, at *6. The agency's Employee and Labor Relations Manual (ELM) incorporates this standard. Specifically, ELM, section 865.1 provides that the agency can require employees returning from medically related absences to submit documentation to clear their return to work when it "has a reasonable belief, based upon reliable and objective information" that the employee may be unable to perform the essential functions of his position or may present a "direct threat to the health or safety of [himself] or others due to that medical condition." IAF, Tab 14 at 7, 33-34. It is the agency's burden to show that its disability-related inquiries and requests for examination are

job-related and consistent with business necessity. *Archerda*, 121 M.S.P.R. 314, ¶ 31.

¶13    Here, the agency did not allege that the appellant could not perform his essential job functions but argued that the station manager acted within her discretion under ELM, section 865.1, to require language regarding whether the appellant was a risk to himself or others because his absence was related to a mental health condition. IAF, Tab 13 at 6-7, Tab 14 at 5-8. In addition, the station manager testified that she requested the additional information because she heard that the appellant engaged in a "back-and-forth" with his supervisor just before he left work on December 15, 2016, and because she was aware that he could not work with a particular supervisor at another facility. HCD (testimony of the station manager). The administrative judge found that these reasons were sufficient to provide the agency with a reasonable basis to require the appellant to submit medical documentation containing the direct threat language. ID at 27. The appellant challenges these findings on review, arguing that he did not engage in an altercation before departing work on December 15, 2016, and that there was no evidence that he posed a direct threat to himself or others. PFR File, Tab 1 at 2‑5. For the reasons that follow, we agree with the appellant that the agency did not have a reasonable basis to request additional medical information and that the administrative judge erred in finding otherwise.

¶14    "Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r); *see Archerda*, 121 M.S.P.R. 314, ¶ 30. The Board has found that an agency had a reasonable belief that the employee presented a "direct threat" when he submitted a psychiatrist's note less than 5 months earlier stating that he had experienced "aggressive episodes." *Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 17. The EEOC has concluded that an agency had a reasonable belief that an employee presented a direct threat to herself when she exhibited specific behavioral changes following an accident,

including violent outbursts and unsafe actions. *O'Malley v. U.S. Postal Service*, EEOC Appeal No. 01994945, 2002 WL 31232360, at *4-*5 (Sept. 26, 2002). Further, an example in the EEOC's Enforcement Guidance states that an agency could require medical documentation based on a reasonable belief that the employee posed a direct threat due to a medical condition when, prior to a period of absence for psychiatric treatment, the employee threatened several of his coworkers and was disciplined. Enforcement Guidance, 2000 WL 33407181, at *14. On the other hand, the Board and EEOC have found that an agency did not have a reasonable belief that an employee presented a direct threat due to a medical condition when there was no evidence in the record that he was physically violent or posed a significant risk of doing substantial harm. *Archerda*, 121 M.S.P.R. 314, ¶ 32; *see Clark v. U.S. Postal Service*, EEOC Appeal No. 01992682, 2001 WL 1526433, at *3-*4 (Nov. 20, 2001).

¶15        Here, as noted above, the first reason cited by the agency in support of its decision to require the appellant to provide medical documentation containing the direct threat language was because his absence was related to a mental health condition. IAF, Tab 14 at 7-8. The station manager testified that she required the appellant to provide such documentation because the OHNA advised her that the January 12, 2017 letter indicated that his condition was psychological in nature. HCD (testimony of the station manager). The OHNA and a postmaster testified that the agency requires any employee whose absence from work is related to a mental health condition to provide a medical note specifically addressing whether he is a risk to himself or others before he may be returned to work. HCD (testimonies of the OHNA and postmaster). The mere fact that an employee's absence is related to a mental health condition, however, does not constitute objective and reliable evidence establishing, or even suggesting, that he is likely to be violent or do harm. *See* EEOC Enforcement Guidance on the [ADA] and Psychiatric Disabilities, Notice 915.002, 1997 WL 34622315, *13-*14 (Mar. 25, 1997) (explaining that a determination of whether an individual with a psychiatric

condition poses a direct threat must be based on "specific behavior" rather than solely on the individual's treatment for a psychiatric disability). Therefore, we find that the agency's reliance on the fact that the appellant's absence was related to a mental health condition was not an acceptable basis to require additional medical documentation under the Rehabilitation Act. *See Archerda*, 121 M.S.P.R. 314, ¶ 30; IAF, Tab 14 at 33-34.

¶16      The station manager also testified that she required the appellant to submit additional medical documentation containing the direct threat language because she was aware from the Office of Workers' Compensation Programs (OWCP) Forms CA-17 submitted by the appellant each month that he could not work at another facility with a particular supervisor. HCD (testimony of the station manager). The record contains a copy of one OWCP Duty Status Report, Form CA-17, signed by the appellant's psychologist in January 2017, indicating that the appellant was diagnosed with an anxiety disorder, which OWCP accepted as a workplace injury with a date of injury of January 19, 2005. IAF, Tab 4 at 13. The form also indicates that the appellant was advised to resume work on April 23, 2012, and states the following:

> As described in previous CA-17 Forms submitted, [the appellant] may return to his [position] full time, providing that [he] does not work for, is not supervised by, and his work is neither directly nor indirectly influenced by [the supervisor] (The person I believe is primarily responsible for [his] work injury).

*Id.* It is unclear from the record when the appellant experienced difficulties working with this particular supervisor or the circumstances surrounding those difficulties, although it appears to have been around the beginning of 2005. *Id.* Nevertheless, we find that the station manager's knowledge that the appellant had unspecified difficulties with a particular supervisor and that working with her contributed to his anxiety disorder does not constitute objective evidence establishing, or even suggesting, that he is likely to be violent or do harm. Therefore, we find that the agency has not shown that its reliance on the

appellant's difficulties with a particular supervisor a number of years earlier was an acceptable basis to require additional medical documentation under the Rehabilitation Act. *See Archerda*, 121 M.S.P.R. 314, ¶ 30; IAF, Tab 14 at 33-34.

¶17        Lastly, the station manager testified that she required the appellant to provide the direct threat information in his return-to-work letter because she heard that he was involved in an altercation with his supervisor before he left work on December 15, 2016. HCD (testimony of the station manager). Specifically, she testified that, although she had "no idea exactly what happened" because she was not there, the supervisor told her that he instructed the appellant to work at a different window, the appellant refused, and there was a "back-and-forth." *Id.* The EEOC has held that a workplace argument in which an employee pushed her chest into a coworker's chest did not provide the agency a reasonable basis to believe that the employee posed a direct threat to herself or others, even though her conduct may have been improper. *Snowden v. Department of Veterans Affairs*, EEOC Appeal No. 0120083032, 2011 WL 4343908, at *5 (Sept. 9, 2011). Here, the "back-and-forth" alleged by the station manager describes a mere verbal disagreement between the appellant and his supervisor, without any suggestion that the appellant behaved in a threatening or violent manner.[2] HCD (testimony of the station manager). Therefore, we find that this was an improper basis to require the appellant to submit additional medical information under the Rehabilitation Act. *See Archerda*, 121 M.S.P.R. 314, ¶ 30; IAF, Tab 14 at 33-34.

¶18        In light of the foregoing, we find that the agency violated the Rehabilitation Act when it refused to permit the appellant to return to work and ordered him to

---

[2] Because the statement that the appellant submitted on review from his coworker is unnecessary for us to reach our conclusion here, we do not consider it. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (explaining that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision); PFR File, Tab 1 at 13.

provide additional medical documentation that was not job-related or consistent with business necessity. *See, e.g.*, *Snowden*, 2011 WL 4343908, at *5 (finding that the agency violated the Rehabilitation Act when it ordered the complainant to undergo a fitness-for-duty examination without proving it reasonably believed she was a direct threat or could not perform her essential job functions). Because the agency's actions were wrongful, the agency constructively suspended the appellant when it refused to permit him to return to work, and the Board has jurisdiction over this appeal. *See Rosario-Fabregas*, 122 M.S.P.R. 468, ¶ 8. Because the appellant did not receive due process for this constructive suspension, the action must be reversed. *See Abbott*, 121 M.S.P.R. 294, ¶ 8. Furthermore, because the agency violated the Rehabilitation Act, we find that the appellant has established his disability discrimination claim.[3] *See Evans*, 107 M.S.P.R. 484, ¶ 16 (finding that the agency violated the Rehabilitation Act when it asked a potential employee to disclose the medications he was taking prior to extending a job offer to him and that this violation constituted discrimination based on disability); *Clark*, 2001 WL 1526433, at *3-*5 (finding that the agency discriminated against the employee by requiring him to undergo a fitness-for-duty examination without showing that such examination was job-related or consistent with business necessity in violation of the Rehabilitation Act).

¶19      On review, the appellant reasserts his claims that the agency subjected him to status-based disability discrimination and failed to accommodate his medical conditions of anxiety disorder and asthma. PFR File, Tab 1 at 6-8, 10. The administrative judge found that the Board lacks jurisdiction over these claims

---

[3] The ADA's restrictions on disability-related inquiries and medical examinations apply to individuals both with and without disabilities. *Archerda*, 121 M.S.P.R. 314, ¶ 31. Therefore, the appellant is protected by these restrictions regardless of whether he qualifies as disabled within the meaning of the ADA.

and, alternatively, that the appellant failed to prove them. ID at 32 n.2. In light of our finding that the appellant proved Board jurisdiction over his constructive suspension, the Board has jurisdiction over these claims. However, we find it unnecessary to separately address them. We already have found the agency's actions discriminatory, and therefore wrongful, based on its improper medical inquiry. Under the particular facts of this case, we discern no basis on which the appellant could seek additional damages for these claims, and thus decline to address these other theories of liability. *See Cerge v. Department of Homeland Security*, EEOC Request No. 0520080093, 2008 WL 559447, \*2 (Feb. 20, 2008) (explaining that compensatory damages were available to a complainant who was sent to a fitness-for-duty examination that was not job-related or consistent with business necessity). Because we have found in the appellant's favor on the issues of the constructive suspension and disability discrimination, we need not address the appellant's remaining allegations of error by the administrative judge.[4] *See Coltrane v. Department of the Army*, 25 M.S.P.R. 397, 403 n.9 (1984).

## ORDER

¶20 We ORDER the agency to cancel the appellant's constructive suspension effective January 12 through March 20, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶21 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal

---

[4] To the extent that, for the first time on review, the appellant asserts that the agency violated his return-to-work rights under 5 C.F.R. § 825.214, PFR File, Tab 1 at 9-10, we decline to consider this new argument on review, *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (explaining that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶22     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. See 5 C.F.R. § 1201.181(b).

¶23     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶24     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶25     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a.  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204.  If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.