**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JOMICHELE AGEE-LONG,<br>　　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-17-0518-I-1 |
| 　　　v. | |
| GENERAL SERVICES<br>　　ADMINISTRATION,<br>　　　　　　Agency. | DATE: January 20, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Andrew Kim, Esquire, Atlanta, Georgia, for the appellant.

Deborah Finch, San Francisco, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed her alleged involuntary retirement appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant was a Contract Specialist for the agency. Initial Appeal File (IAF), Tab 10 at 46. She alleges that, in early 2015, she reported that her second-level supervisor was intoxicated on the job and would be absent from work for "hours at a time" or an entire day. IAF, Tab 1 at 7, Tab 6 at 8. On November 9, 2015, the appellant's first-level supervisor issued her a Letter of Warning for inappropriate behavior during a routine status meeting. IAF, Tab 10 at 44-45. According to the appellant, the same supervisor placed her on a 3-month sick leave abuse plan during this timeframe, requiring that she provide a doctor's note for each day that she requested sick leave. IAF, Tab 3 at 6, 9, Tab 7 at 16. In May 2016, the appellant's first- and second-level supervisors issued her an interim performance rating of "unacceptable" and revoked her telework privileges. IAF, Tab 8 at 50; Tab 10 at 43. The agency also denied her a within-grade increase (WIGI) at or around the same time. IAF, Tab 8 at 50.

¶3 The appellant also alleges that she made reports to Federal Protective Services (FPS) in the summer of 2016. IAF, Tab 6 at 8, Tab 7 at 14, 29, Tab 8 at 5. She alleges that she disclosed to FPS that supervisors and managers were engaging in a "chronic drinking environment . . . during duty hours." IAF, Tab 8 at 5. She also claims that she disclosed to FPS that her second-level supervisor had an outburst at work, during which, "[f]or about 5 minutes, over and over again, he jumped and screamed, 'I hate this fucking place'" and "'I hate this fucking job.'"[2] IAF, Tab 6 at 8.

---

[2] The appellant alleges that she spoke with the agency's Office of Inspector General regarding her claim that she was subjected to a hostile work environment. IAF, Tab 5 at 10, Tab 8 at 48. However, it is unclear if this conversation took place before or after her retirement. IAF, Tab 8 at 48. The appellant generally alleges that her second-level supervisor "yell[ed]" at her, but provides no example of this alleged yelling, other than the incident discussed above. IAF, Tab 6 at 14.

¶4 In June 2016, the appellant's first-level supervisor issued her a written reprimand for two instances of failure to follow instructions. IAF, Tab 10 at 36-37. A month later, he issued the appellant a Notice of Proposed Suspension for failure to follow instructions, inappropriate behavior, failure to provide him with a contract inventory status, failure to send 60-day notices of the Government's intent to exercise contract options, and failure to issue contract modifications. *Id.* at 29-35. The appellant's division director, who was the deciding official, sustained the charges and suspended the appellant from September 6 to 20, 2016. *Id.* at 20-28.

¶5 On September 22, 2016, the appellant's first-level supervisor again issued the appellant a written reprimand for disruptive behavior. *Id.* at 14-15. He also placed her on a 90-day performance improvement plan (PIP). *Id.* at 4-10. The appellant alleges that during the PIP the agency added new assignments on top of her existing assignments and denied her training that she needed to complete her assignments. IAF, Tab 5 at 19. Six days after the agency placed her on a PIP, the appellant began seeking retirement counseling from the agency. IAF, Tab 11 at 8-10.

¶6 On October 26, 2016, the appellant requested reasonable accommodations of a flexible work schedule and a quiet location where she could "focus on [her] duties."[3] IAF, Tab 9 at 63-65. On October 31, 2016, an agency reasonable accommodation coordinator asked the appellant to provide medical documentation to substantiate her need for a quiet work location. *Id.* She observed that the medical documentation the appellant provided did not reflect "any required changes in [her] workplace." *Id.* at 64. She also indicated that a flexible work schedule would prevent the appellant from performing her essential job duties. *Id.* at 65. It appears that the appellant did not provide the requested

---

[3] The appellant alleges that she first requested accommodation while she was serving her September 2016 suspension and that the agency denied that request due to lack of medical documentation. IAF, Tab 6 at 13.

documentation. IAF, Tab 6 at 13. She asserts that she believed documentation that she previously provided to the agency was sufficient because her disability was "well-documented and noted as permanent." *Id.* According to the appellant, the agency's treatment of her caused her medical condition to worsen, and she began a period of leave on November 3, 2016. *Id.* at 14. She also alleges that she learned on November 14, 2016, that her annual performance rating was going to be unacceptable. *Id.* at 13. She retired effective November 30, 2016. IAF, Tab 9 at 53-54. Two days before her retirement, she told an agency employee processing her retirement paperwork that, "I am happy with the decision and very much looking forward to the next season in my life's journey." *Id.* at 54.

¶7    The appellant filed an equal employment opportunity (EEO) complaint in which she alleged that she involuntarily retired as a result of agency discrimination. IAF, Tab 9 at 15. The agency issued a Final Agency Decision (FAD) denying the appellant's EEO complaint on May 22, 2017. *Id.* at 16-39. Although the appellant also raised a whistleblower reprisal claim in her EEO complaint, the FAD did not include notice of her right to file a claim with the Office of Special Counsel (OSC). *Id.* at 37-38. The appellant filed this involuntary retirement appeal on June 21, 2017. IAF, Tab 1. She re-raised her discrimination and whistleblower reprisal claims. *Id.* at 12. The administrative judge gave the appellant notice of the elements and burdens of establishing jurisdiction over her involuntary retirement appeal, but did not address her potential whistleblower reprisal claim. IAF, Tab 2 at 2-3.

¶8    Both parties responded to the jurisdictional notice. IAF, Tabs 5-8, 11. The administrative judge determined that the appellant failed to make a nonfrivolous allegation that the agency's actions had affected her decision-making process in a way that deprived her of freedom of choice and coerced her retirement. IAF, Tab 13, Initial Decision (ID) at 3-7. Thus, he dismissed the appeal for lack of Board jurisdiction without holding the appellant's requested hearing. ID at 1; IAF, Tab 1 at 2.

¶9      On review, the appellant reiterates that her decision to retire was the result of the intolerable working conditions caused by the agency's discriminatory and retaliatory acts.  Petition for Review (PFR) File, Tab 1 at 5-6, 19-20.  The agency has filed a response in opposition to the appellant's petition for review.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

### The appeal must be remanded for the appellant to make a knowing and informed election of remedies.

¶10      Under 5 U.S.C. § 7121(g), an appellant who has been subjected to an action appealable to the Board, and who alleges that she has been affected by a prohibited personnel practice other than a claim of discrimination under 5 U.S.C. § 2302(b)(1), may elect one, and only one, of the following remedies:  (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under the provisions of a negotiated grievance procedure; or (3) an OSC complaint, potentially followed by an individual right of action (IRA) appeal.  *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 15 (2016); *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 17 (2015), *overruled in part by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-25.  An election under 5 U.S.C. § 7121(g) is binding only if it was knowing and informed. *Corthell*, 123 M.S.P.R. 417, ¶ 17. An agency's failure to inform an employee fully of her potential appeal rights under 5 U.S.C. § 7121(g) and any limitation on those rights precludes a finding that the appellant made a knowing and an informed election of remedies under that provision.  *Corthell*, 123 M.S.P.R. 417, ¶ 17.  Here, the agency did not issue a letter of decision regarding the appellant's retirement, and its disciplinary actions did not include such notice.  IAF, Tab 10 at 15, 28, 37, 45.  Further, there is no indication that she was informed through other means, such as the agency's FAD on her EEO complaint.  IAF, Tab 9 at 37-39.  Thus, we must remand the appeal for the appellant to make a knowing and informed election of remedies.  *See Corthell*, 123 M.S.P.R. 417, ¶¶ 17-18

(remanding a case for an administrative judge to allow an appellant to make a knowing and an informed election of his remedy because he had not receive notice of his option to file an adverse action appeal).

¶11 On remand, if the appellant elects to pursue an IRA appeal, the administrative judge should provide her with notice of her jurisdictional burden and an opportunity to establish jurisdiction over such an appeal. *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985) (explaining that an appellant must receive explicit information on what is required to establish an appealable jurisdictional issue). To do so, the appellant must show by preponderant evidence that she exhausted her remedies before OSC, and make nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Corthell*, 123 M.S.P.R. 417, ¶ 8.

¶12 As to the first element of the jurisdictional burden, the appellant's report to the OIG appears to qualify as protected activity under 5 U.S.C. ¶ 2302(b)(9)(C). *Corthell*, 123 M.S.P.R. 417, ¶ 9; *see also Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 12 (2010) (reflecting that a former employee can make protected disclosures). As to the second element, the Board has found that an appellant may pursue an involuntary retirement claim as a personnel action in an IRA appeal. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 10 (2015). In addition, the appellant's letters of reprimand, suspension, WIGI denial, and placement on a PIP are personnel actions. 5 U.S.C. § 2302(a)(2)(A)(iii), (ix); *see Horton v. Department of Veterans Affairs*, 106 M.S.P.R. 234, ¶ 18 (2007) (stating that a letter of reprimand is a personnel action); *Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 15 (2006) (explaining that a PIP is considered a personnel action for purposes of an IRA appeal). The letter of

warning also was a personnel action because it cautioned the appellant that "future misconduct may result in more severe disciplinary action, including removal." IAF, Tab 10 at 44; *see* 5 U.S.C. § 2302(b)(8)-(9) (providing that a threat to take a personnel action because of a protected activity or disclosure is prohibited); *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002) (finding that a memorandum of warning that included the threat of disciplinary action for any further misconduct was a personnel action). Depending on the circumstances, the agency's denial of the appellant's request to relocate offices, processing of the appellant's leave, and denial of training also may be personnel actions, either cumulatively or separately. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16 (finding that agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities are actionable in an IRA appeal); *Hoback v. Department of the Treasury*, 86 M.S.P.R. 425, ¶ 10 (2000) (agreeing with an administrative judge that denial of training may be a personnel action if the training was reasonably likely to lead to an appointment, promotion, performance evaluation, or other action described at 5 U.S.C. § 2302(a)(2)(A)); *Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶¶ 5, 10, 21 (2000) (adjudicating an appellant's placement on leave without pay following the exhaustion of his annual and sick leave as a personnel action).

¶13      We make no finding as to whether the appellant met her jurisdictional burden to nonfrivolously allege that her disclosures in early 2015 and the summer of 2016 were protected, or that her alleged protected disclosures or activities were a contributing factor in any of the alleged agency actions, because the record is not developed on the jurisdictional issue. If the appellant elects to adjudicate any or all of the alleged personnel actions as an IRA appeal and meets her burden to establish Board jurisdiction, the administrative judge will lack jurisdiction over

her EEO claims in connection with those actions. *Corthell*, 123 M.S.P.R. 417, ¶ 16.

If the appellant elects to pursue her chapter 75 appeal, the administrative judge should hold a jurisdictional hearing.

¶14    If the appellant elects to pursue a chapter 75 action as to her alleged involuntary retirement, the administrative judge should hold the appellant's requested hearing on the issue of jurisdiction. IAF, Tab 1 at 2. The administrative judge found that the Board lacks jurisdiction over the appellant's alleged involuntary retirement because her claims that the agency's actions were unjustified were not supported by the record. ID at 5-6. Further, he concluded that the evidence suggested that she was considering retirement for some time. ID at 6-7. We find that the administrative judge improperly weighed the evidence at the jurisdictional stage without a hearing.

¶15    A retirement is presumed to be voluntary and outside of the Board's jurisdiction. *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 21 (2014). An involuntary retirement, however, is equivalent to a forced removal within the Board's jurisdiction under chapter 75. *Id.* The touchstone of the voluntariness analysis and the common element in all Board cases involving alleged involuntary resignations or retirements is that factors have operated on the employee's decision-making processes that deprived her of freedom of choice. *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 22 (2004). The totality of the circumstances is examined under an objective standard to determine voluntariness. *Id.* Under that standard, the Board will find a retirement or resignation involuntary only if the employee demonstrates that under all the circumstances working conditions were made so difficult by the agency that a reasonable person would have felt compelled to resign. *Id.*

¶16    An appellant is entitled to a hearing on the issue of Board jurisdiction over an appeal of an alleged involuntary retirement if she makes a nonfrivolous allegation casting doubt on the presumption of voluntariness. *Id.*, ¶ 23. A

nonfrivolous allegation is an allegation of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the appeal. *Id.* Thus, to establish entitlement to a jurisdictional hearing, an appellant need not allege facts that, if proven, definitely would establish that the retirement was involuntary; she need only allege facts that, if proven, could establish such a claim. *Id.*

¶17 When, as here, allegations of discrimination and reprisal for whistleblowing activity are alleged, such evidence may be addressed at the jurisdictional stage only insofar as it relates to the issue of voluntariness and not whether the evidence would establish discrimination or reprisal as an affirmative defense. *Id.*, ¶ 24. Thus, evidence of discrimination and reprisal goes to the ultimate question of coercion.[4] *Id.*

¶18 In determining whether the appellant has made a nonfrivolous allegation of jurisdiction entitling her to a hearing, an administrative judge may consider an agency's documentary submissions. *Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994). But, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties and the agency's evidence may not be dispositive. *Id.* Here, the appellant alleges that she suffered a hostile work environment beginning in November 2015 and ending with her retirement

---

[4] If the administrative judge determines that the Board has jurisdiction over the appellant's adverse action appeal, her appeal will not be subject to the jurisdictional requirements of an IRA appeal, and the administrative judge should adjudicate the appellant's claims of discrimination and reprisal for protected activity and disclosures as affirmative defenses. PFR File, Tab 1 at 19-26; IAF File, Tab 3 at 13-15; *see Corthell*, 123 M.S.P.R. 417, ¶ 17 (providing that if, on remand, an appellant made a knowing and an informed election of pursuing a chapter 75 alleged involuntary retirement appeal, the adverse action appeal would not be subject to the jurisdictional requirements of an IRA appeal or limited to the issues listed at 5 U.S.C. § 1221(a)); *Savage*, 122 M.S.P.R. 612, ¶ 22 (explaining that if an appellant proved that she suffered a constructive suspension on remand, the administrative judge should consider whether the suspension was taken in retaliation for whistleblowing activity).

approximately 2 years later. IAF, Tab 1 at 7-8, 11-12. She submitted her sworn EEO investigative affidavit, which attests to the facts underlying her claims. IAF, Tab 6 at 4-19; *see* 5 C.F.R. § 1201.4(s) (indicating that an allegation generally will be considered nonfrivolous when it is made under oath or penalty of perjury, is more than conclusory, is plausible on its face, and is material to the legal issues in the appeal).

¶19    This appeal involves a number of actions that the appellant alleged created a hostile work environment and forced her to retire. A combination of workplace actions, such as a PIP, a diminished performance appraisal, and workplace isolation, may be sufficient to meet the nonfrivolous pleading standard. *Coufal*, 98 M.S.P.R. 31, ¶¶ 26-27. Here, the appellant alleged that the agency took a number of punitive actions for 2 years that culminated in her perception that she had no choice but to retire. In sum, during this period, she alleges that the agency issued her a letter of warning, two reprimands, and a suspension; placed her on a sick leave abuse plan; denied her a WIGI, placed her on a PIP with unreasonable work assignments, and rated her as unacceptable on her mid-year and end-of-year evaluations; and revoked her telework privileges, denied her training, and required her to submit medical documentation that it already had to support her reasonable accommodation request.

¶20    The administrative judge considered and discounted a number of the appellant's allegations as not substantiated by the record. ID at 5-6. For example, he found that the agency's October 31, 2016 response to the appellant's reasonable accommodation request was "detailed and thoughtful," and the agency "reasonably required more medical documentation to address very valid concerns." ID at 5. However, in doing so, he did not consider the appellant's statement in her affidavit that she had already submitted sufficient medical information, and that the agency's mistreatment caused her medical condition to

worsen such that she could no longer work.[5]  IAF, Tab 6 at 13-14; PFR File, Tab 1 at 18-19; *see Rosario-Fabregas v. Department of the Army*, [122 M.S.P.R. 468](#), ¶¶ 14-15 (2015) (discussing those circumstance in which an agency may request medical information under the Americans with Disabilities Act Amendments Act), *aff'd*, [833 F.3d 1342](#) (Fed. Cir. 2016); *O'Brien v. Department of Agriculture*, [91 M.S.P.R. 139](#), ¶¶ 8-9 (2002) (finding that the appellant nonfrivolously alleged that the agency's actions caused his medical condition to worsen, resulting in his retirement).

¶21    In making his jurisdictional finding, the administrative judge considered evidence submitted by the agency that the appellant began inquiring about her retirement options as early as the end of September 2016, and expressed her satisfaction with her retirement decision a couple months later.  ID at 6-7; IAF, Tab 9 at 54, Tab 11 at 8-10.  We agree that the timing of the appellant's retirement and her statements concerning that retirement are relevant considerations in the voluntariness determination.  *E.g.*, *Terban v. Department of Energy*, [216 F.3d 1021](#), 1024 (Fed. Cir. 2000) (agreeing with the Board's decision to give greater weight to events that occurred closer to an employee's alleged involuntary retirement).  Nonetheless, in finding this evidence more persuasive than the appellant's affidavit attesting to her alleged coerced retirement, the administrative judge impermissibly weighed the evidence without holding a jurisdictional hearing to resolve the parties' conflicting assertions regarding the Board's jurisdiction over the appeal.  *Walker v. Department of the Army*, [119 M.S.P.R. 391](#), ¶ 9 (2013).

¶22    We find that, as alleged, a reasonable person in the appellant's position could have felt that the agency's actions left her no choice but to retire.  Because

---

[5] On review, the appellant disputes many of the administrative judge's factual findings. PFR File, Tab 1 at 16-19.  She also argues that he failed to address all of the agency's alleged coercive acts.  *Id.* at 15-16.  In light of our remand for a hearing on the jurisdictional issue, we do not reach these arguments.

the appellant disputes the agency's evidence, resolution of this issue requires that the administrative judge hold a hearing to weigh the evidence and resolve the conflicting factual assertions. *Ferdon*, 60 M.S.P.R. at 330 (remanding for a hearing because the appellant disputed the agency's evidence and his allegations, if proven, could establish a prima facie case of Board jurisdiction). Thus, the administrative judge should hold a jurisdictional hearing if the appellant chooses to elect her chapter 75 remedy.

¶23 Further, on remand, the administrative judge should rule on the appellant's request to extend the period to initiate discovery. The appellant filed a timely request to extend this deadline. IAF, Tab 2 at 4-5, Tab 12. The administrative judge did not rule on that request below. The appellant is entitled to request discovery of relevant materials to assist her in meeting her burden of establishing the Board's jurisdiction. *Russo v. Department of the Navy*, 85 M.S.P.R. 12, ¶ 8 (1999). On remand, the administrative judge should determine whether the appellant still wishes to engage in the discovery process and set appropriate deadlines.

## ORDER

¶24 For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:  _____/s/ for_____
                Jennifer Everling
                Acting Clerk of the Board

Washington, D.C.