**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROCKY FREUDENBERG,
              Appellant,

     v.

DEPARTMENT OF VETERANS
    AFFAIRS,
              Agency.

DOCKET NUMBER
AT-1221-18-0321-W-2

DATE: December 5, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Stephen Goldenzweig, Esquire, Houston, Texas, for the appellant.

Robert Vega, Esquire, and Lindsay J. Gower, Washington, D.C., for the
    agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

*Member Kerner recused himself
and did not participate in the adjudication of this appeal.

**FINAL ORDER**

      The appellant has filed a petition for review of the initial decision, which
denied his request for corrective action in this individual right of action (IRA)

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant established that his disclosure was a contributing factor in an additional personnel action and to amend the administrative judge's analysis of the agency's affirmative defense, we AFFIRM the initial decision.

## BACKGROUND

On November 6, 2011, the agency appointed the appellant to the position of GS-14 Management and Program Analyst in the Veterans Affairs Center for Innovation (VACI) of the agency's Veterans Health Administration (VHA), in Washington, D.C., also referred to in the record as VHA Innovation. *Freudenberg v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-18-0321-W-1, Initial Appeal File (IAF), Tab 46 at 10-12. In January 2013, the appellant contacted the agency's Office of Inspector General (OIG) concerning another employee's telecommuting practices. IAF, Tab 44 at 13-14; Hearing Transcript, Volume 1 (HT 1) at 38-41 (testimony of the appellant). The appellant disclosed that the agency had detailed a Veterans Benefit Administration (VBA) employee to work with the VACI team and had paid to relocate him temporarily

from Nashville, Tennessee to Washington, D.C., but this VBA employee did not personally meet with the team during his stay and, instead, continued to work remotely from his Washington, D.C. hotel room. HT 1 at 38-41 (testimony of the appellant). Shortly after his OIG disclosure, on March 10, 2013, the appellant began a 1-year leave of absence for medical reasons. IAF, Tab 48 at 33-34.

On February 24, 2014, shortly before the appellant's scheduled return to duty, the OIG completed its investigation into the appellant's allegations and issued a wide-ranging and highly critical report of investigation. *Id.* at 60-86. The OIG concluded that the VACI Director and various VBA personnel had committed prohibited personnel practices and otherwise failed to properly discharge their duties in connection with the VBA detailee. *Id.* at 61-62. The OIG further concluded that the VBA detailee had misused agency time and resources, including more than $30,000 in travel expenses. *Id.* at 70-78. The report included numerous recommendations for the agency's Chief of Staff, ranging from bolstering internal controls, to conducting refresher training on various topics, to considering administrative action against several of the employees involved. *Id.* at 88-89. Both the VACI Director and the VBA Program Director resigned from the agency during the pendency of the investigation. *Id.* at 61-62.

With his year of medical leave about to expire, on February 26, 2014, the appellant requested reasonable accommodation in the form of full-time telework from his home in Augusta, Georgia. IAF, Tab 45 at 100-02, 120; HT 1 at 42-45 (testimony of the appellant). The appellant's supervisor granted his request on an interim basis, pending final approval. IAF, Tab 45 at 120. It does not appear that either the appellant or his supervisors pursued the matter any further, and the "interim" accommodation continued through March 11, 2015, whereupon the appellant's supervisor renewed his telework agreement for another year. *Id.* at 107.

In April or May of 2015, after the appellant's supervisor was detailed to another position, the agency assigned a new individual to supervise the appellant. HT 1 at 29-30 (testimony of the appellant). In September 2015, the appellant underwent back surgery in San Francisco and requested accommodations in the form of leave and telework from San Francisco during his recovery. IAF, Tab 47 at 46-47. The appellant's supervisor approved his request for leave but did not approve his request to telework from San Francisco. IAF, Tab 47 at 86; Hearing Transcript, Volume 2 (HT 2) at 33 (testimony of the appellant's supervisor). On November 5, 2015, the appellant's supervisor instructed him to return to duty in Washington, D.C. upon the expiration of his leave. IAF, Tab 49 at 27. The appellant remained on leave until April 5, 2016, when he returned to duty in Washington, D.C. as directed. IAF, Tab 47 at 63; *Freudenberg v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-18-0321-W-2, Appeal File (W-2 AF), Tab 9 at 115-18; HT 2 at 18 (testimony of the appellant's supervisor). The appellant continued to work in Washington, D.C. until approximately August 9, 2017, when the agency approved his request to resume fulltime telework from Georgia. IAF, Tab 47 at 59-60.

Meanwhile, on February 8, 2017, the agency had notified the appellant and several other employees of an upcoming opportunity to work as Acting Director of VHA Innovations. *Id.* at 58. The appellant applied for the role, but the Executive Director for Connected Health and her Co-Director selected another individual instead. IAF, Tab 45 at 83, Tab 46 at 39; W-2 AF, Tab 11 at 5-6; HT 1 at 215-17 (testimony of the Executive Director).

On April 11, 2016, the appellant filed a complaint with the Office of Special Counsel (OSC) and a follow-up letter on March 23, 2017, alleging that the agency took various personnel actions against him in retaliation for his January 2013 OIG disclosure. IAF, Tab 5 at 31-49, 49-64. OSC closed the appellant's file without taking corrective action, and the appellant filed the instant IRA appeal. IAF, Tab 1.

After a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 26, Initial Decision (ID). He found that the appellant failed to show that some of the claimed retaliatory actions amounted to "personnel actions" cognizable in an IRA appeal, and that, as to those personnel actions that were cognizable, the appellant failed to show that his protected activity was a contributing factor. ID at 10-18. The administrative judge found that the appellant proved his case in chief with respect to two personnel actions – the revocation of his telework arrangement and his nonselection for Acting Director – but that the agency proved by clear and convincing evidence that it would have taken these same actions notwithstanding the appellant's protected disclosure. ID at 19-25.

The appellant has filed a petition for review, disputing the administrative judge's analysis of all his claims, but focusing mainly on the revocation of his telework arrangement in November 2015. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

In the merits phase of an IRA appeal, the appellant has the burden of proving by preponderant evidence that he engaged in protected activity described under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D), and that this activity was a contributing factor in a personnel action as described under 5 U.S.C. § 2302(a)(2)(A). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant makes this showing, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected activity. 5 U.S.C. § 1221(e) (1)-(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

In this case, the administrative judge found that the appellant's January 2013 disclosure to the OIG was protected under both 5 U.S.C. § 2302(b)

(8)(A) and 5 U.S.C. § 2302(b)(9)(C).[2]  ID at 9-10 & n.9.  Neither party disputes this finding, and for the reasons explained in the initial decision, we agree with the administrative judge that the appellant's disclosure to the OIG was protected under 5 U.S.C. § 2302(b)(9)(C).[3]  ID at 10 n.9.

<u>The appellant's protected disclosure was a contributing factor in three personnel actions.</u>

Turning to the other elements of the appellant's case, he alleged that the agency took nine personnel actions against him in retaliation for his protected activity.  IAF, Tab 5 at 13-28.  The administrative judge found jurisdiction to consider seven of these alleged personnel actions. IAF, Tab 28 at 3-5.  The appellant does not contest this ruling on review, and we discern no reason to disturb it.  The administrative judge identified the seven alleged personnel actions as follows:  (1) after the appellant's year-long absence in 2013 and 2014, the VACI Director prevented him from returning to his proper position, assigned him ad hoc duties, and instructed him not to contact the individual who had filled in for him during his absence; (2) the agency decreased his job functions; (3) the agency excluded him from certain meetings; (4) the agency revoked his telework agreement; (5) the agency denied his request for telework as a reasonable accommodation; (6) the agency failed to provide him with an adequate workspace; and (7) the agency did not to select him to be Acting Director. W-2 AF, Tab 12 at 3.  The administrative judge found that the appellant proved

---

[2]  The appellant originally claimed four additional protected disclosures, but the administrative judge found that the Board lacks jurisdiction over these additional disclosures in the context of the instant appeal because the appellant variously failed to show that he raised them with OSC or made a nonfrivolous allegation that the disclosures were protected.  IAF, Tab 5 at 8-13, Tab 28 at 1-3.  The appellant has not contested this ruling, and we discern no basis to disturb it.

[3] To the extent that the administrative judge analyzed the content of the appellant's OIG disclosure in determining whether it was protected, we vacate this finding as unnecessary.  ID at 9-10.  Under the broadly worded provision of 5 U.S.C. § 2302(b)(9) (C), any disclosure to an OIG is protected regardless of its content as long as such a disclosure is made in accordance with applicable provisions of law.  *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8.

by preponderant evidence that actions 4 and 7 (the telework revocation and the nonselection) constituted "personnel actions" within the meaning of 5 U.S.C. § 2302(a)(2)(A) and his OIG disclosure was a contributing factor in those actions. ID at 15-16, 18-19. However, he found that for actions 1-3 and 5-6, the appellant either failed to prove that these constituted "personnel actions" or failed to establish contributing factor, or both. ID at 11-18. The appellant contests these findings on review, and we will address each claimed personnel action in turn. PFR File, Tab 1 at 25-28.

To begin with, we observe that, between claimed personnel actions 1-3 and 5-6, none of them are explicitly identified as such under 5 U.S.C. § 2302(a)(2)(A). Rather, as the administrative judge correctly found, they would fall, if anywhere, under the category of "significant change in duties, responsibilities, or working conditions." ID at 11-18; 5 U.S.C. § 2302(a)(2)(A)(xii). To amount to a "significant change" under section 2302(a)(2)(A)(xii), an agency action must have a significant impact on the overall nature or quality of an employee's working conditions, responsibilities, or duties. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 15. In determining whether an appellant has suffered a "significant change" in his duties, responsibilities, or working conditions, the Board must consider the alleged agency actions both collectively and individually. *Id.* ¶ 6. With that standard in mind, we address the specifics of each of these actions.

Regarding personnel action 1, the administrative judge found that VACI's mission focus changed significantly during the appellant's year-long absence, that many of the appellant's duties were eliminated or automated during that time, and that the appellant experienced a corresponding significant change in duties within the scope of 5 U.S.C. § 2302(a)(2)(A)(xii) upon his return. ID at 11. However, the administrative judge found that the appellant failed to show that his OIG disclosure was a contributing factor in that change because the VACI Director changed the appellant's duties before the OIG report was released on

February 24, 2014, and there was no evidence that the VACI Director became aware of the appellant's disclosure until after that date. ID at 11-12. The administrative judge further found that, even assuming the VACI Director thereafter instructed the appellant not to contact his "replacement," this instruction alone did not constitute a "significant" change in duties, responsibilities, or working conditions. ID at 12.

On petition for review, the appellant argues that the administrative judge erred in his contributing factor analysis, and he cites evidence in support of his argument that the VACI Director was aware of his whistleblowing activity. PFR File, Tab 1 at 25. However, all of the evidence that the appellant cites pertains to the period postdating the OIG report's February 24, 2014 release. *Id.* 6-8, 11-12, 25; HT 1 at 219 (testimony of the Executive Director). Therefore, the appellant has provided no basis to disturb the administrative judge's finding that he failed to establish contributing factor with respect to personnel action 1 because the VACI Director took the action prior to learning of his disclosure. *See Martin v. Department of the Air Force*, 73 M.S.P.R. 574, 580-81 (1997).

For personnel action 2, the administrative judge found that the appellant failed to show that the alleged decrease in his job functions constituted a significant change in duties under 5 U.S.C. § 2302(a)(2)(A)(xii). Specifically, he found that the appellant failed to provide evidence of what his duties were prior to the release of the OIG report, and that without such evidence, it was impossible to determine whether and to what extent the appellant's duties changed after the report was released. ID at 13-14.

On petition for review, the appellant argues that personnel action 1 and personnel action 2 involve "the same set of duties," and thus, the administrative judge erred in finding a significant change in duties with respect to the first of these claims but not the second. *Id.*; PFR File, Tab 1 at 26. However, if both of these alleged personnel actions involve the same change in duties, then personnel action 2 is part and parcel of personnel action 1, and it suffers from the same

infirmity with respect to contributing factor. IAF, Tab 5 at 13-14, 17-18; *supra* 7-8. To the extent that the appellant is arguing that the administrative judge erred in finding that he failed to meet his burden of proof, we disagree. Preponderant evidence is "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q). The appellant testified as to the nature of his diminished duties. HT 1 at 70-72 (testimony of the appellant). He gave examples of preparing a spreadsheet and writing two articles. *Id.* He also described the level of these duties as "roughly GS-9 middle duties." *Id.* at 70. However, because he failed to explain how these assignments differed from or were less than his prior duties, we agree with the administrative judge that he did not present evidence that, more likely than not, he suffered a significant change in duties. ID at 12-13.

The administrative judge's analysis of personnel action 3 was similar to his analysis of personnel action 2. Specifically, he found that the appellant failed to provide evidence of the meetings he attended prior to his disclosure becoming known, and without this evidence, it could not be determined whether his exclusion from certain meetings after that date represented a significant change in his duties, responsibilities, or working conditions.[4] ID at 14-15. On petition for review, the appellant disputes this finding, arguing that he "offered significant, specific testimony about particular meetings that other VACI employees were invited to that he was excluded from, including emails describing those meetings." PFR File, Tab 1 at 27. The appellant is correct that he testified to being excluded from VACI meetings. HT 1 at 73, 77, 91-92 (testimony of the appellant). However, as the administrative judge correctly found, none of this

---

[4] Because a "significant change in duties, responsibilities, or working conditions" may be cumulative in nature, personnel actions 1, 2, and 3 could arguably be viewed as parts of a single, overarching personnel action. *Skarada*, 2022 MSPB 17, ¶ 16. However, this would not change the outcome of the analysis because the appellant has not shown that he suffered any change, significant or not, with respect to personnel actions 2 and 3.

testimony speaks to whether the appellant attended similar meetings prior to the release of the OIG report. ID at 14-15. Because the appellant has failed to establish this baseline with sufficient clarity, we agree with the administrative judge that the Board cannot engage in a meaningful analysis of whether and to what extent the appellant's meeting attendance changed. *Id.*

Personnel action 4 involves the November 5, 2015 revocation of the appellant's telework arrangement. The administrative judge found that this constituted a significant change in the appellant's working conditions and that the appellant's disclosure was a contributing factor in this personnel action. ID at 4-5. Neither party disputes these findings, and for the reasons explained in the initial decision, we agree with the administrative judge's analysis. *Id.*

Personnel action 5 pertains to the agency's denial of the appellant's request for reasonable accommodation, specifically its denial of the appellant's request to have his telework reinstated in April 2016. IAF, Tab 5 at 22. The administrative judge found that this constituted a personnel action but that the appellant failed to prove contributing factor. ID at 16-17. On petition for review, the appellant concedes that the knowledge/timing test of 5 U.S.C. § 1221(e)(1) is not satisfied because personnel action 5 occurred more than 2 years after the relevant officials became aware of his OIG disclosure, but he argues that he proved contributing factor by alternative means. PFR File, Tab 1 at 28.

We agree with the appellant that the record supports a finding of contributing factor for this personnel action, not necessarily on the basis of strong retaliatory motive, but rather, because personnel action 5 is essentially a continuation of personnel action 4. The Board has found that the knowledge/timing test may be satisfied when a personnel action that occurred more than 2 years after the protected disclosure was "part of a continuum of related personnel actions." *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (quoting *Jones v. Department of the Interior*, 74 M.S.P.R. 666, 679 (1997)).

Regarding personnel action 6, the administrative judge found that, after the appellant's telework was discontinued and he reported to duty in Washington, D.C., the agency failed to provide him with a functional workspace or a chair that was compatible with his disabilities. ID at 18. Nevertheless, the administrative judge found that the lack of this space and equipment did not rise to the level of a personnel action because the agency remedied the situation promptly. *Id.* On petition for review, the appellant argues that the administrative judge "essentially [found] the violation was de minimis and therefore not a sufficient personnel action," and that this "speaks to damages more than to the existence of the claim and even if the period at issue was short the act still occurred." PFR File, Tab 1 at 28. We disagree. A de minimis change in working conditions is, by definition, not significant. The appellant has demonstrated no error in the administrative judge's analysis.

Regarding personnel action 7, the administrative judge found that the appellant's March 2017 nonselection for Acting Director was a personnel action and that the appellant established contributing factor via the knowledge/timing test because the nonselection occurred within 2 years of the Executive Director becoming aware of his OIG disclosure. ID at 18-19. The agency does not dispute this finding, and we agree with the administrative judge's analysis. *See* 5 U.S.C. § 2302(a)(2)(A)(ii), (iv) (including promotions and details under the definition of "personnel action"); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (stating that a personnel action taken within approximately 1 to 2 years of an appellant's disclosure satisfies the knowledge/timing test).

The agency proved by clear and convincing evidence that it would have taken personnel actions 4, 5, and 7 notwithstanding the appellant's protected disclosure.

Even if an appellant establishes that he made a protected disclosure that was a contributing factor in a personnel action, the Board will not order corrective action if the agency shows by clear and convincing evidence that it would have taken the same action even in the absence of the protected disclosure.

5 U.S.C. § 1221(e)(2); *Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 6 (2007). In determining whether an agency has met its burden, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 36 (2011). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

*The November 2015 revocation of the appellant's telework arrangement*

Regarding personnel action 4, the November 2015 revocation of the appellant's telework arrangement, the administrative judge found that the agency proved by clear and convincing evidence that the appellant's supervisor would have taken the same action notwithstanding the protected disclosure. ID at 19-24. Considering the strength of the agency's evidence in support of its action, the administrative judge found that the appellant's official duty station was in Washington, D.C., and not in Georgia. ID at 20. He also found that the telework arrangement that the appellant's supervisor revoked was not a permanent reasonable accommodation granted under the Rehabilitation Act. ID at 20-21. He further found that the appellant's supervisor granted him a significant amount

of leave without pay (LWOP) before requiring him to return to duty in Washington, D.C. and that he took this action only after consulting with human resources officials and the agency's Office of General Counsel. ID at 21.

The administrative judge found little evidence of retaliatory motive by the appellant's supervisor because the OIG report did not even mention this supervisor, and there was no indication that anyone whom the report did mention had any influence over the decision. ID at 22. The administrative judge further found that, although there was some evidence that the appellant's supervisor viewed him as a "troublemaker," there was nothing to connect this attitude to the appellant's whistleblowing activity, and in fact, the tension between the appellant and his supervisor appears to have been connected to matters that occurred after the appellant's return to Washington, D.C. ID at 22-24. Regarding the agency's treatment of similarly situated non-whistleblowers, the administrative judge found that, although many VHA Innovations employees were permitted to telework, there was no evidence that any of these employees had duties similar to the appellant's. ID at 24.

On petition for review, the appellant argues that the agency had no legitimate business reason for requiring him to return to duty in Washington, D.C. In particular, the appellant's supervisor testified that he required him to return to Washington, D.C. because the appellant's position description denoted that location as his duty station, but this explanation fell apart upon cross examination, when it was shown that neither the position description nor any other relevant evidence indicated a Washington, D.C. duty station for the appellant. PFR File, Tab 1 at 17-19, 21-24. Nor was there any explanation of the utility of having the appellant physically present in Washington, D.C. *Id.* at 23-24. The appellant further argues that there is ample testimony demonstrating his supervisor's retaliatory motive, *id.* at 18-19, 24, and that he was treated less favorably than other VHA Innovations employees who were allowed to telework, *id.* at 24.

We have considered the appellant's arguments, but we are not persuaded. As to the strength of the agency's evidence in support of its action, we agree with the appellant that there are some gaps in the evidence that, considered in isolation, could give the appearance of pretext. PFR File, Tab 1 at 20-24. Specifically, the appellant's supervisor testified that he discontinued the appellant's telework arrangement and required him to report to duty in Washington, D.C. because that was the duty station identified in the position description. IAF, Tab 49 at 25; HT 2 at 10 (testimony of the appellant's supervisor). However, on cross-examination, it came out that the record contained no document matching the supervisor's testimony. HT 2 at 38-46 (testimony of the appellant's supervisor). In addition, shortly before the appellant's telework was discontinued, the Local Reasonable Accommodation Coordinator (LRAC) handling the matter informed the appellant that he could not locate any accommodations on file for the appellant, despite the fact that the appellant had been working under a telework accommodation from February 2014 until November 2015, when his new supervisor discontinued it. IAF, Tab 45 at 120, Tab 47 at 83.

Nevertheless, the administrative judge credited the supervisor's testimony that there was, in fact, a position description for the appellant that specified his duty station as the agency's Central Office in Washington, D.C. ID at 5; HT 2 at 10, 40, 43 (testimony of the appellant's supervisor). Although the absence of this document from the record would tend to undermine the supervisor's testimony that the document actually existed, the supervisor's testimony is consistent with the fact that the appellant actually worked at the Central Office from the date of his appointment until early 2014, when he began teleworking from Georgia. IAF, Tab 46 at 12; HT 1 at 18-19 (testimony of the appellant); *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (stating that, to resolve credibility issues, an administrative judge should consider such factors as the contradiction of the witness's version of events by other evidence or its

consistency with other evidence). Considering the record as a whole, we do not find a sufficiently sound basis to overturn the administrative judge's finding on this issue. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (holding that the Board may overturn an administrative judge's implicitly demeanor-based credibility determinations only when it has "sufficiently sound" reasons for doing so).

Furthermore, although we agree with the appellant that his telework arrangement was an accommodation afforded to him under the Rehabilitation Act, PFR File, Tab 1 at 20-21; IAF, Tab 45 at 100-02, 120, we also agree with the administrative judge that it was an interim accommodation afforded to him prior to completion of the interactive process, ID at 21; IAF, Tab 45 at 120; HT 2 at 146-47 (testimony of the LRAC). The record does not reveal why neither the appellant nor his supervisor at the time took any further action on the reasonable accommodation request, but the most likely explanation is that they were both satisfied with the telework arrangement and preferred to continue this "interim" accommodation indefinitely rather than go through the trouble of finalizing it with a reasonable accommodation coordinator. The consequence of this arrangement was that, when the appellant began reporting to a new supervisor, he had no record on file of an official reasonable accommodation having been granted. HT 2 at 146 (testimony of the LRAC).

In any event, the revocation of the appellant's telework coincided with his 6 months of leave for back surgery in San Francisco, and these two matters appear to be related. Specifically, just prior to his surgery, the appellant requested both LWOP and permission to telework from San Francisco while undergoing post-surgical care. IAF, Tab 47 at 56. The appellant's supervisor granted the LWOP request, initially through December 21, 2015, but he deemed the appellant's telework request to be a reasonable accommodation matter, which he referred to the LRAC. IAF, Tab 47 at 45; W-2 AF, Tab 9 at 118.

The LRAC requested certain information from the appellant, but instead of providing this information, the appellant responded with a series of questions to insinuate that his request should be granted based on his preexisting arrangement of teleworking from Georgia. IAF, Tab 47 at 43. The LRAC then advised the appellant that his previous accommodation may not have been fully processed, and in order to document the accommodation and make it official, the appellant would need to complete the appropriate form and engage in the interactive process with his supervisor. *Id*. at 83-84. The appellant replied with a nonresponsive email accusing his supervisor of whistleblower retaliation. *Id.* at 82-83. Subsequently, the appellant informed the LRAC that he would put his accommodation request on hold pending the outcome of his surgery and rehabilitation. *Id.* at 81. On October 2, 2015, the LRAC closed out the appellant's request and advised him, "Once you have a better idea regarding your condition, you may contact me to discuss further and I will review your request and updated medical documentation." *Id.* The actions of the agency here were consistent with its obligation to provide reasonable accommodation to disabled employees. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 13 & n.5 (2015) (discussing an agency's responsibility to provide such accommodations), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016). An employee's failure to engage in the interactive process by, for example, failing to provide necessary documentation may prevent an agency from identifying a reasonable accommodation. *Id.*, ¶ 18.

With this cessation of the interactive process, the appellant's supervisor decided against granting the telework request because the post-surgical care appeared to him a temporary condition that was better addressed through ordinary medical leave rather than through telework. HT 2 at 33 (testimony of the appellant's supervisor).

Despite approving the appellant's lengthy LWOP (and subsequently granting multiple extensions), the appellant's supervisor testified that he desired

to return the appellant to duty, and he consulted multiple agency officials to come up with a plan. These included labor relations staff, the Director for Workforce Planning & Employee Administration, and a human resources attorney. IAF, Tab 49 at 27; HT 2 at 10, 56-57 (testimony of the appellant's supervisor). In addition, the appellant's supervisor testified, consistent with the appellant's position description, that the appellant's physical presence at the Central Office was desirable because maintaining personal contacts with individuals located there was an important part of his job. IAF, Tab 44 at 59, 63-64;. HT 2 at 10, 56 (testimony of the appellant's supervisor). Given the nature of the appellant's job duties, the location of his duty station at the agency's Central Office, the appellant's supervisor's consultation with other agency officials, and the supervisor's lack of awareness of the appellant's previous accommodation, we agree with the administrative judge that the agency provided strong evidence in support of its decision to discontinue the appellant's telework. ID at 20-21.

Regarding retaliatory motive, we observe as an initial matter that the Board's analysis of this *Carr* factor usually centers on the nature, content, and ramifications of the disclosure itself, both as to the official who took the personnel action and as to any other officials who may have influenced the decision. *See, e.g.*, *Whitmore*, 680 F.3d at 1370-71; *Phillips*, 113 M.S.P.R. 73, ¶¶ 22-29. In this case, the administrative judge found that the OIG report did not contain any negative findings about the appellant's supervisor, or even mention his name, and that there was no evidence that the decision to cancel the appellant's telework was influenced by anyone actually named in the OIG report.[5] ID at 22. He, therefore, found "no meaningful evidence" of retaliatory motive. *Id.*

The appellant does not dispute the administrative judge's finding that the nature, content, and ramifications of his disclosure were inherently unlikely to

---

[5] This supervisor worked in another section of VHA Innovations at the time of the disclosure and OIG report and only entered the appellant's supervisory chain some time in 2015. IAF, Tab 44 at 50, 52; HT 2 at 5-7 (testimony of the appellant's supervisor).

motivate his supervisor to retaliate. Instead, he comes at the issue another way. Citing evidence of animus and friction between him and his supervisor, he would have the Board infer that these were a result of his disclosure and, in turn, find strong retaliatory motive. PFR File, Tab 1 at 18-19. Among other things, the appellant argues that his supervisor demonstrated retaliatory animus when he "bragged" about cancelling the appellant's telework and when he failed to correct his own supervisor's profane outburst about the appellant. *Id.* The administrative judge, however, considered this evidence and declined to draw any inference of retaliatory motive. ID at 22-24.

We modify the initial decision to find some indication of retaliatory motive on the part of the appellant's supervisor. A supervisor who represents the "general institutional interests of the agency" may have some motive to retaliate for a disclosure that casts the agency as a whole in a negative light, even if that disclosure does not implicate him directly. *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 69 (2011). Here, the administrative judge overstated the case by finding that there was "no meaningful evidence" of retaliatory motive. ID at 22. Rather, the administrative judge should have expressly considered the possibility of a professional retaliatory motive. *See Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (finding that, while there may not be a personal motive, the administrative judge erred by failing to consider whether the deciding official had a "professional retaliatory motive" against the appellant because his disclosures "implicated the capabilities, performance, and veracity of [agency] managers and employees, and implied that the [agency] deceived [a] Senate Committee."). We find evidence of a slight professional retaliatory motive on the part of the appellant's supervisor because the appellant's disclosures cast the agency as a whole in a negative light. However, there is no evidence that any such retaliatory motive was strong. As the administrative judge correctly found, there is scant evidence to tie the alleged tension between the appellant and his supervisor to the appellant's disclosures,

and it can be largely attributed to events that occurred after the appellant's telework arrangement was already cancelled. ID at 22.

Regarding the agency's treatment of similarly situated non-whistleblowers, the administrative judge found, and the appellant does not dispute, that the only VHA Innovations employee with similar duties and responsibilities was the individual whom the agency selected to fill in for the appellant during his year-long absence beginning in February 2013. ID at 24. The administrative judge found no indication that this employee was permitted to telework. *Id.* The appellant disputes this finding and asserts that his fill-in replacement was permitted to telework. PFR File, Tab 1 at 24. In support, he cites his own testimony that he "never saw" this individual in the office. *Id.*; HT 1 at 53 (testimony of the appellant). However, it appears that the appellant was working in a large building and on a different floor than this other individual, and we decline to infer from the appellant's vague testimony that the reason he "never saw" this coworker was because he was telecommuting. The appellant has provided no basis to disturb the administrative judge's finding that the agency's treatment of similarly situated non-whistleblowers is not a significant factor in the analysis. ID at 24.

Considering the totality of the circumstances, including the supervisor's reasons for returning the appellant to Washington, D.C., his slight retaliatory motive, and the relatively neutral comparator evidence, we agree with the administrative judge that the agency proved by clear and convincing evidence that it would have taken the same personnel action notwithstanding the appellant's OIG disclosure. ID at 20-22. In this regard, we also observe that, around this same time, the appellant's supervisor granted him generous amounts of LWOP and assisted the appellant by promptly referring his telework request to the LRAC. IAF, Tab 47 at 86-88, 101; W-2 AF, Tab 9 at 116-18. These are not actions characteristic of an official who is attempting to retaliate against his subordinate.

*The agency's denial of the appellant's reasonable accommodation request*

As set forth above, personnel action 5 concerns the agency's denial of the appellant's reasonable accommodation request in April 2016. *Supra* 10. Because he found that the appellant failed to establish that his protected disclosure was a contributing factor in this personnel action, the administrative judge did not determine whether the agency proved by clear and convincing evidence that it would have taken the same action notwithstanding the disclosure. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 28 (2016). Normally, in cases like this one when there was a hearing at which the administrative judge had the opportunity to observe the witnesses' demeanor, the Board would remand the appeal for the administrative judge to conduct this analysis in the first instance. *See, e.g.*, *Mastrullo*, 123 M.S.P.R. 110, ¶ 22; *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 22 (2008). However, we find that a remand is unnecessary in this case because personnel action 5 is intertwined with personnel action 4, and therefore, the record on this issue is sufficiently developed for us to make a finding on review.

After the November 5, 2015 return-to-duty letter, the appellant did not raise the telework accommodation issue with the agency again for several months. HT 1 at 85-87 (testimony of the appellant). Then, on February 24, 2016, with his approved LWOP about to expire the following week, the appellant emailed the LRAC, his supervisor, and several other agency officials, reiterating that he had been previously accommodated through telework from Georgia. IAF, Tab 47 at 94. The LRAC responded, again informing the appellant that he could not find any approved accommodations on file for him, asking for a copy of any approved accommodations that might exist, and furnishing the appellant with several forms to complete to get the interactive process started again. IAF, Tab 46 at 92-93. The appellant responded, asserting that he was seeking "continuity of care" for his surgery and that he would not be having his medical provider complete the

required form because there were no duties that he could not perform. *Id.* at 92. The LRAC then closed the appellant's case on the basis that he was able to perform all of his job functions and submitted no evidence of disability. *Id.* at 91. However, before the appellant's return-to-duty date arrived, his supervisor extended his LWOP for another month, until April 5, 2016. W-2 AF, Tab 9 at 116.

On April 1, 2015, the appellant again emailed his supervisor, requesting to telework from Georgia or, in the alternative, to be granted additional LWOP. IAF, Tab 47 at 74. The appellant's supervisor denied these requests but again referred the appellant's accommodations request to the LRAC. *Id.* at 71, 73. The appellant again asserted, multiple times and in multiple emails, that he had been granted a telework accommodation in 2014 but to no avail. On April 5, 2016, the appellant returned to duty at the Central Office in Washington, D.C., as scheduled. *Id.* at 69-72; Tr. 2 at 18 (testimony of the appellant's supervisor).

The appellant pursued the matter again between May and July 2016. On May 5, 2016, he contacted the Executive Director for Connected Health, who offered to help him expedite his accommodation request if he would send her a copy of it. IAF, Tab 44 at 91-95. On June 28, 2016, the appellant responded by sending her a copy of the February 26, 2014 form on which his former supervisor had approved his interim telework accommodation. IAF, Tab 47 at 50. This form was forwarded to the LRAC, who advised management that it was insufficient to grant the appellant's request, that the appellant needed to supply medical documentation as well, and that the appellant should contact him with any questions. *Id.* at 49-50. On July 11, 2016, the LRAC forwarded the appellant two forms to complete and return – a VA0857A Written Confirmation of Request for Accommodation and a VA0857E Request for Medical Documentation. IAF, Tab 46 at 72. On July 20, 2016, the appellant completed and returned the VA0857A Written Confirmation of Request for Accommodation, explaining that he was requesting telework because he had arthritis in his back and knees, and

commuting to and from the Central Office was causing him severe pain. *Id.* at 72, 74. On July 21, 2016, and again on July 26, 2016, the LRAC asked the appellant when he could expect to receive the completed VA0857E Request for Medical Documentation. W-2 AF, Tab 9 at 47. The appellant responded that he would let the LRAC know when it was done. W-2 AF, Tab 9 at 47. However, after 2 months of waiting with no further correspondence, on September 29, 2016, the LRAC again closed out the appellant's request "until medical documentation is received." *Id.*

It appears that the appellant dropped the matter until the following year, when, for the first time on June 22, 2017, he submitted a request for accommodation complete with medical documentation. *Id.* at 42-46. On August 9, 2017, the Executive Director approved the appellant's request to telework from Georgia full time. *Id.* at 40-41.

Looking at this timeline of events, we find that the agency had strong reasons for denying the appellant's telework requests throughout 2016. The appellant was repeatedly advised throughout this time period, and indeed in the months leading up to it, that the existence of a previous interim accommodation was not a sufficient basis to grant his current request and that he would need to have his healthcare provider complete the proper forms in order for the process to move forward. The appellant was provided these forms on multiple occasions and was repeatedly reminded that they needed to be returned. Nevertheless, he continually chose not to cooperate with the agency and instead insisted that the existence of his February 26, 2014 interim accommodation was all the information the agency needed. Tellingly, when the appellant finally supplied the requested medical documentation in June 2017, the agency acted promptly in granting his telework request. The agency was fully justified in requiring medical evidence to support the appellant's request for reasonable accommodation, and it did not violate the Rehabilitation Act by declining to grant the grant the request until such documentation was provided. *See Moylett v. U.S. Postal Service*,

Appeal No. 0120091735, 2012 WL 3059884 at *11–12 (July 17, 2012) (finding that an employee was responsible for a breakdown in the interactive process because he did not respond to his agency's reasonable request for documentation regarding his disability and functional limitations); Equal Employment Opportunity Commission, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disability Act, Questions 6, 8 (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/ enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (last visited Nov. 22, 2024).

Regarding the retaliatory motive of the agency officials involved, the administrative judge found that the appellant's supervisor had little motive to retaliate for the appellant's OIG disclosure. For reasons set forth above, we find evidence of a slight retaliatory motive on the part of the appellant's supervisor. *See Robinson*, 923 F.3d at 1019. The other agency officials involved in this personnel action were the LRAC and the Executive Director. The administrative judge found, and the appellant does not dispute, that there is no evidence to suggest that the LRAC had any retaliatory motive. ID at 17. The administrative judge also found no evidence that the Executive Director had any motive to retaliate for the appellant's disclosure because the disclosure was not directed at her, and she was not mentioned in the OIG's report of investigation. ID at 25. We disagree with the administrative judge that there was no evidence of retaliatory motive for the Executive Director because, like the appellant's immediate supervisor, she was an official who represented the "general institutional interests of the agency." *Chambers*, 116 M.S.P.R. 17, ¶ 69. Nevertheless, we find that her motive to retaliate was slight.

Neither party presented any evidence on whether the agency granted accommodations to similarly situated non-whistleblowers despite the absence of medical documentation. Mindful that the agency bears the burden of proof on

this point, we find that this factor cuts slightly against the agency. *See Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016).

Nevertheless, considering the record as a whole, and in light of our finding that the agency proved by clear and convincing evidence that it would have discontinued the appellant's telework on November 5, 2015, notwithstanding his protected disclosure, we also find that the agency proved by clear and convincing evidence that it would have declined to reinstate the appellant's telework notwithstanding his protected disclosure. We find the course of events as set forth above to be compelling. It was the appellant, and not the agency, who was responsible for the repeated breakdown of the interactive process, and there is little reason to suppose that the continual denial of the appellant's telework request was attributable to anything but his own failure to comply with the agency's reasonable request for medical documentation.

*The appellant's March 2017 Nonselection for Acting Director of VHA Innovations*

Regarding personnel action 7, the appellant's March 2017 nonselection for Acting Director of VHA Innovations, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the same personnel action even absent the appellant's disclosure. ID at 24-25. Specifically, the administrative judge found that the agency had strong reasons for its decision because the appellant's application did not include all of the information requested. Furthermore, the appellant lacked the leadership experience of the individual whom the agency ultimately selected – experience that the agency maintained was crucial in the selection process. *Id.* The administrative judge also found that the two selecting officials, the Executive Director and her Co-Director, lacked retaliatory motive. ID at 25. Regarding the agency's treatment of similarly situated non-whistleblowers, the administrative judge found that this factor also weighed in the agency's favor because there was

no indication that the selectee's application was incomplete and thus that he was similarly situated to the appellant. *Id*.

On petition for review, the appellant disputes the strength of the agency's reasons in support of this action.[6] First, he contests the administrative judge's finding that he did not submit the required materials with his application. PFR File, Tab 1 at 16. However, we find that the appellant's bare assertion that he submitted the required materials constitutes mere disagreement with the administrative judge's reasoned and explained finding on this issue and therefore provides no basis to disturb the initial decision. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980). This is especially so because the administrative judge's finding in this regard was based implicitly on witness demeanor. ID at 25; *see Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (holding that Board must give "special deference" to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed").

Second, the appellant renews his argument that the agency arbitrarily limited its consideration of leadership experience to the past 3 years in order to rig the selection process against him. PFR File, Tab 1 at 15-16. As an initial matter, we find that the appellant is misreading the agency's job announcement; the Executive Director requested that applicants submit their last three performance reviews, but she did not put a time limit on consideration of leadership experience. IAF, Tab 45 at 81. Furthermore, even if the agency had imposed such a limitation, we take notice that recent experience is generally more pertinent than older experience when it comes to job applications, and we agree with the administrative judge that there is no reason to suppose that any such limitation was calculated to harm the appellant's prospects. ID at 25 n.19. For

---

[6] The appellant also argues that he proved that his disclosure was a contributing factor in his nonselection under the knowledge/timing test. PFR File, Tab 1 at 28-29. However, this represents agreement with the administrative judge's finding and reasoning on this issue. ID at 18-19.

the reasons explained in the initial decision, we agree with the administrative judge that the agency's selection decision was well-supported. ID at 24-25.

The appellant does not contest the administrative judge's finding that neither the Executive Director nor the Co-Director had motive to retaliate for his disclosure. ID at 25. With the caveat that both of these officials would presumably have had some retaliatory motive as representatives of the agency's institutional interests, we agree with the administrative judge that the evidence of retaliatory motive is weak.

Regarding the agency's treatment of similarly-situated individuals, although the appellant does not contest the administrative judge's finding on this issue either, we cannot agree with the administrative judge's reasoning. The agency may have established that the appellant and the selectee were not similarly situated, but this does not constitute evidence of the agency's treatment of non-whistleblowers whose applications were similar to the appellant's and who applied for the position at issue or similar positions. Therefore, this factor cannot favor the agency. *See Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019). Nevertheless, although this factor does not weigh in the agency's favor, we do not find that it weighs significantly in favor of the appellant. *See Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 20 (2016).

Considering the evidence as a whole, we agree with the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would not have selected the appellant for Acting Director even in the absence of his protected disclosure. ID at 24-25.

**NOTICE OF APPEAL RIGHTS**[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

   If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

   Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

   If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.